UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SMALL BUSINESS LENDING, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:18-cv-02712-JMS-TAB |
| DAVID PACK, | ) |
| Defendant. | ) |

## ORDER

Presently pending before the Court is Defendant David Pack's Motion to Dismiss, in which he alleges that this Court lacks *in personam* jurisdiction over him. [Filing No. 9.] Mr. Pack seeks to dismiss Plaintiff Small Business Lending, LLC's ("SBL") Complaint for injunctive relief and damages related to a written agreement between SBL and Mr. Pack. [Filing No. 1-1 at 7-17.] Mr. Pack's Motion is fully briefed and is now ripe for the Court's review. For the reasons stated herein, the Court **DENIES** Mr. Pack's Motion.

## I.
### LEGAL STANDARD

When a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of showing that personal jurisdiction over the defendant exists." *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003). When, as here, the Court "rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff 'need only make out a prima facie case of personal jurisdiction.'" *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Accordingly, "[o]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of

1

jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 782-83. Factual disputes, however, are resolved in the plaintiff's favor. *Id.*

"A federal district court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case . . . only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause. *See LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965-66 (Ind. 2006). "Thus, the statutory question merges with the constitutional one—if [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so." *Northern Grain*, 743 F.3d at 492.

"The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due-process clause." *Id*. "[F]ederal constitutional law draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and general or all-purpose jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012). "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place. More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Specific personal jurisdiction is at issue in this case.

## II.
### BACKGROUND

### A. The Agreement

On or about April 4, 2018, Mr. Pack and SBL entered into an independent contractor agreement (the "Agreement"). [Filing No. 1-1 at 32 (containing the parties' signatures, dated April 3 and April 4, 2018).] The Agreement provides, in relevant part, as follows:

> This Agreement (the "Agreement") is made on 04/03/2018, by and between Small Business Lending LLC, (the "Company"), located at 7206 Franklin Parke Blvd, Indianapolis, Indiana 46259 in the County of Marion, and David W. Pack, (the "Independent Contractor" or "Contractor") located at of 163 Caroway Ct, Spartanburg, Georgia 29303

[Filing No. 1-1 at 19.] Thereafter, the Agreement states that "[t]he Independent Contractor is secured to provide the services described below at the Company's principal place of business as aforementioned, or from the Contractor's principal place of business, if applicable, as aforementioned." [Filing No. 1-1 at 19.]

The Agreement provides that the "Independent Contractor is or shall remain open to conducting similar tasks or services for the Company, which may not be listed or described below, or for entities other than the Company and thus holds himself or herself out to the public to be a separate business entity." [Filing No. 1-1 at 19.] Subsequently, regarding the scope of work, the Agreement provides that:

> The contractor will be provided leads and also have access to the predictive dialer. Once the leads are provided the contractor will contact and send application and retrieve documents so that we can provide business financing needs

[Filing No. 1-1 at 20.]

The Agreement contains the following provisions discussing compensation:

3

> Compensation Terms: Commissions are paid daily as they are paid to the company. Commission is based on the size of the loans that are issued to the merchants that are generated from the current campaign (the size and amount can never be guaranteed). The commission that is paid on the funded financed deal and will vary deal to deal. Commission that you are paid is 33 % of the funded deal, this is not known until the offer is confirmed with the lender as there are many variables with each deal. Commission will be paid the following day after Small Business Lending LLC receives the Commission via Direct deposit.
> Total Compensation Amount: $0.00
>
> Said compensation shall become due and payable to the Independent Contractor upon receipt of an invoice by the Company and payable pursuant to the following schedule and method:
>
> Compensation Schedule: 2-10 days after the deal is funded in the event of a defaulted loan commission will be paid back in entirety via Clawback
> Compensation Method: Commission from the funded deal will be paid

[Filing No. 1-1 at 21.]

The Agreement contains a non-solicitation clause which provides that the independent contractor shall not solicit or attempt to solicit customers or clients of the company "throughout the duration of this Agreement and for a period of (sic) immediately following the termination of this Agreement." [Filing No. 1-1 at 23.]

The Agreement contains a non-compete clause which provides as follows:

> **Non-Compete Clause**
> The Independent Contractor herein agrees not to participate in any activity or action that may be deemed of a competitive nature with any activity of the Company during the course of their relationship and for a period of 2 years after the termination of this Agreement. Therefore, for the purpose of this paragraph, competitive activity thus encompasses forming and/or making plans to form a business entity that may be seen as being competitive with any business of the Company.
>
> During and after the Contractor's contract period with the Company, in the State of North Carolina, and for a period of 2 years following termination of employment, however caused, the Contractor, or his/her Subcontractors, shall not seek or gain employment with any newly formed business (business formed after termination of this Agreement) that is in competition with the Company, its subsidiaries or affiliates within All States described as United States or within a All
>
> Businesses Within The United States mile radius of the Company and the aforementioned business location.

[Filing No. 1-1 at 23-24.]

The Agreement also contains a two paragraph non-recruit clause. The first paragraph provides that the independent contractor "shall not throughout the duration of this Agreement and for a period of 2 year (sic) immediately following the termination of this Agreement, either directly or indirectly, recruit any of the Company's employees, customers, clients or management for the purpose of any outside business." [Filing No. 1-1 at 24.] The second paragraph of the non-recruit clause mirrors verbatim the second paragraph of the non-compete clause. [Filing No. 1-1 at 24.]

The Agreement contains two severability clauses on the same page, one of which states that if any "term, condition, or provision" of the Agreement is "held to be invalid or unenforceable for any reason, those remaining terms, conditions and provisions shall remain valid and enforceable," while the other provision provides that "the balance of the Agreement shall nevertheless remain in full force and effect so long as the Purpose of the Agreement is not affected in any manner adverse to either party." [Filing No. 1-1 at 31.]

Regarding termination, the Agreement provides that:

> This Agreement shall be terminated at the conclusion of the Scope of Work or on 03/28/2019. It may be terminated prior to the completion or achievement of the Scope of Work for reasonable cause by either party. Such termination shall not prejudice any other remedy to which the terminating party may be afforded or entitled, either by law, in equity or in accordance with the terms and conditions contained within this Agreement.

[Filing No. 1-1 at 27.]

Lastly, the Agreement contains a forum selection clause, which states that:

> This Agreement is to be construed pursuant to the current laws of the State of Indiana. Jurisdiction and venue for any claim arising out of this Agreement shall be made in the State of Indiana, in the County of Marion.

[Filing No. 1-1 at 32.]

**B. Complaint**

On August 17, 2018, SBL filed a Complaint against Mr. Pack in Marion Superior Court. [Filing No. 1-1 at 1.] Therein, SBL alleged the following:

- on April 3, 2018, it entered into the Agreement with Mr. Pack, whereby Mr. Pack would make contact with potential clients in return for a percentage of SBL's brokerage commission, [Filing No. 1-1 at 8];

- the Agreement contained certain representations and warranties, a non-compete clause, and a non-recruit clause, and required Mr. Pack to return SBL's property to it upon termination of his status as an independent contractor, [Filing No. 1-1 at 8-9];

- on July 24, 2018, SBL terminated the Agreement and demanded that Mr. Pack return SBL's property to it, [Filing No. 1-1 at 9];

- Mr. Pack has refused to return SBL's property, [Filing No. 1-1 at 10]; and

- Mr. Pack violated the Agreement numerous times by embarking on a new business in competition with SBL, providing services to SBL's competitors, soliciting SBL's employees, and appropriating trade secrets, [Filing No. 1-1 at 10-11].

SBL requested a preliminary injunction, as well as a permanent injunction prohibiting Mr. Pack from engaging in broker financing services with any of SBL's competitors. [Filing No. 1-1 at 12-13.] In addition, SBL brought claims for breach of contract, breach of fiduciary duties, violation of the Indiana Trade Secrets Act, and unjust enrichment. [Filing No. 1-1 at 13-16.]

**C. Removal to Federal Court**

On August 30, 2018, Mr. Pack removed this matter to the Court on the basis of diversity jurisdiction. [Filing No. 1.] In response to the Court's Order noting deficiencies in the initial Notice of Removal, [Filing No. 5], on September 8, 2018, Mr. Pack filed an Amended Notice of

Removal, [Filing No. 8]. SBL responded to the Amended Notice of Removal and argued that the amount in controversy had not been satisfied. [Filing No. 13.] On October 18, 2018, the Court ruled that Mr. Pack had discharged his obligation to set forth a plausible, good-faith estimate that the amount in controversy in this matter exceeds the statutory threshold, exclusive of interest and costs. [Filing No. 17.]

In the meantime, Mr. Pack filed a Motion to Dismiss for Lack of Personal Jurisdiction, [Filing No. 9], which is now ripe for the Court's review.

## III.
### DISCUSSION

Mr. Pack moves to dismiss SBL's Complaint on the basis that he is not subject to this Court's personal jurisdiction. [Filing No. 10 at 11.] In so moving, Mr. Pack makes three arguments, each of which the Court will consider in turn.

**A. Whether a Contract Exists**

Mr. Pack first contends that no contract was formed with SBL because the Agreement "contains conflicting provisions concerning the location of the work, the scope of the work, the payment terms, the termination provisions, the degree to which Mr. Pack was required to comply with SBL's directions, and the scope of the non-solicitation, non-compete, and non-recruitment clauses." [Filing No. 10 at 12.] Due to these six categories of conflicting provisions, Mr. Pack argues that there was a "failure to reach complete agreement as to the contractual terms," which negated mutual assent and prevented the formation of a contract. [Filing No. 10 at 12.]

In response, SBL contends that Mr. Pack's argument that there was no contract is undercut by evidence that Mr. Pack understood his responsibilities under the Agreement and was compensated for performing them. [Filing No. 22 at 5.] As such, SBL argues that the Agreement

is a contract that contains a valid forum selection clause in which Mr. Pack agreed to jurisdiction in Indiana. [Filing No. 22 at 1-2.]

In his reply brief, Mr. Pack reiterates his argument that the forum selection clause does not control because the Agreement is invalid. [Filing No. 24 at 1.] He refutes SBL's contention that there was a valid contract because value was conferred upon Mr. Pack, arguing that such an argument cannot save a faulty contract. [Filing No. 24 at 2.]

SBL subsequently filed a supplement as to case law[1] arguing that Indiana courts cannot "*sua sponte* declare the parties' contract void, due to inconsistencies, whether substantive or contrived, in verbiage contained in written documents." [Filing No. 25 at 1.]

Given that "this is a diversity case filed in the State of Indiana, Indiana rules of contract interpretation control." *United Leasing, Inc. v. Balboa Capital Corp.*, 2017 WL 3674926, at *3 (S.D. Ind. Aug. 25, 2017) (citing *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004)). Additionally, this Court, sitting in diversity, must "deduce, as closely as possible, how the Indiana Supreme Court would rule" on the question at issue. *Hinc*, 382 F.3d at 720 (citing *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636-37 (7th Cir. 2002)).

If ambiguity in a contract "arises because of the language used in the contract . . . then its construction is purely a question of law to be determined by the trial court." *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 440 (Ind. 2015). "Courts should interpret a contract so as to harmonize

---

[1] SBL's "Supplementation as to Case Law Regarding Defendant's Motion to Dismiss" appears to have been filed as a result of the Court granting SBL an extension of time to file its response. On November 8, 2018 SBL filed a Motion for Extension of Time to file its response to Mr. Pack's Motion to Dismiss. [Filing No. 20.] The Court did not rule upon SBL's Motion until three days after the deadline for SBL's response. [Filing No. 23.] In the meantime, however, SBL filed its response by the original deadline. [Filing No. 22.] Then, on the same day Mr. Pack filed his reply, SBL filed this "supplementation." [Filing No. 25.] Having received no objection thereto, the Court will consider the arguments contained in SBL's "supplementation," as appropriate herein.

its provisions, rather than place them in conflict." *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *transfer denied*, 59 N.E.3d 252 (Ind. 2016). In addition, "[a] contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless." *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017) (citations omitted).

This case turns on the Indiana rule of contract interpretation that provides that the "failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994) (citation omitted). The Indiana Supreme Court most recently discussed this rule in 2009 and emphasized that the only terms that need be included in a contract are those that are "essential":

> To be valid and enforceable, a contract must be reasonably definite and certain. All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. Only essential terms need be included to render a contract enforceable. Thus, where any essential element is omitted from a contract, or is left obscure or undefined, so as to leave the intention of the parties uncertain as to any substantial term of the contract, the contract may not be specifically enforced.

*Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009); *see also BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 539 (7th Cir. 2018) (quoting Indiana Law Encyclopedia 279, § 24 cmt.) ("[t]he required writing need not contain all the material terms of the contract, and such material terms as are stated need not be precisely stated ....").

However, nowhere in *Conwell* does the Indiana Supreme Court define or delineate what constitutes an "essential term." Instead, a review of Indiana Court of Appeals cases reveals that whether a particular contract term is "essential" depends on the contract at issue. *See, e.g.*, *Jernas*, 53 N.E.3d at 447 (holding that the street address of the property to be purchased was an essential element of a real estate contract); *B&R Oil Co. v. Stoler*, 2016 WL 276722, at *9 (Ind. Ct. App. 2016) (stating that "the release of the plaintiff's claims is among the most material terms in a

9

settlement agreement"); *Brodie v. Viking Dev.*, LLC, 2015 WL 256165, at *7 (Ind. Ct. App. Jan. 21, 2015) ("price is an essential term to a land-sale contract"). However, in *Sasso v. Warsaw Orthopedic, Inc.*, the Indiana Court of Appeals set forth a more detailed analysis for determining whether a contract term is essential. There, the court held that a list of products to be counted as "Medical Devices" was an essential term of the contract because it was "needed to determine whether there [was] a breach and the amount of damages." 45 N.E.3d 835, 841 (Ind. Ct. App. 2015). Two years later in *RQAW Corp. v. Dearborn Cty.*, the Indiana Court of Appeals applied the rule set forth in *Sasso* and determined that the essential terms of the contract at issue were "the parties, the scope of work to be completed, and the cost of such work" because without such terms "it would be impossible to determine whether a future breach occurred and, if so, what damages would be appropriate." 83 N.E.3d 745, 753 (Ind. Ct. App. 2017).

In this case, Mr. Pack asks for an extreme outcome – a finding from this Court that the Agreement is not a contract and is therefore void because it contains conflicting terms. This, however, is a bridge too far. For starters, some portions of the Agreement with which Mr. Pack takes issue are not necessarily conflicting. For example, Mr. Pack contends that the scope of work provision conflicts with a later provision of the Agreement stating that Mr. Pack "shall be open to conducting similar tasks or services" for SBL "which may not be listed or described [in the statement of work]." [Filing No. 10 at 3.] Mr. Pack reads these two provisions as being in conflict, but this position ignores Indiana's rules of contract interpretation. Indiana courts have held that "[a] contract is not ambiguous merely because the parties disagree as to its proper construction," and a contract must "be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless." *Jernas*, 53 N.E.3d at 444 (citations omitted). Based on these principles, the Court could conclude that the latter portion of the Agreement does not

expand or contradict the scope of work, but instead leaves the door open for Mr. Pack to enter into subsequent or additional contracts with SBL.

Mr. Pack is correct that the Agreement is poorly and even illogically drafted. However, this does not necessarily prevent a meeting of the minds. For example, the non-compete clause of the Agreement discusses non-competition in the state of North Carolina – a curious provision considering that Mr. Pack resided in South Carolina at time the Agreement was signed.[2] [Filing No. 1-1 at 19; Filing No. 1-1 at 23-24.] But just as Indiana courts have recognized that "the general rule of freedom of contract includes the freedom to make a bad bargain," *Indiana Bell Tel. Co. v. Mygrant*, 471 N.E.2d 660, 664 (Ind. 1984), the freedom of contract in Indiana also includes the freedom to make a partially irrelevant, albeit enforceable bargain.

Moreover, even if the Agreement contains some provisions that are in conflict, Mr. Pack makes no effort to argue that any such provision constitutes an essential element under Indiana law. The Court is not persuaded that the Agreement lacks all elements that are "needed to determine whether there is a breach and the amount of damages" under *Sasso*. As such, the Court rejects Mr. Pack's argument that the Agreement does not constitute a binding contract.[3] Because Mr. Pack makes no contention that the parties to the Agreement lacked a meeting of the minds with regard to the forum selection clause itself, or that the forum selection clause is invalid for any other reason, *see Farm Bureau Gen. Ins. Co. of Michigan v. Sloman*, 871 N.E.2d 324, 329 (Ind.

---

[2] Although the Agreement lists Mr. Pack's address as being in Georgia, Mr. Pack contends, and SBL does not dispute, that he actually resided in South Carolina. For the purposes of the Court's analysis on this point, Mr. Pack's actual residence at the time the Agreement was signed is irrelevant except to note that it was not located in North Carolina.

[3] The Court's finding that the Agreement is a contract should not be read to indicate that the contract says what SBL contends it says. Although the Agreement contains some contractual terms, it is far from being a model of clarity. As such, the Court expresses significant skepticism as to SBL's ability to prevail on some of its claims given the inconsistencies, typographical and other errors and blank spaces throughout. Those issues are not before the Court at this time.

Ct. App. 2007) (holding that forum selection clauses are "enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party would be deprived of a day in court"), the Court finds that the forum selection clause in the Agreement establishes that this Court has jurisdiction over this matter.

Having determined that the forum selection clause governs, the Court need not discuss Mr. Pack's second argument regarding whether he had sufficient minimum contacts with Indiana to establish jurisdiction, and instead turns to Mr. Pack's third and final argument.

### B. Claims do not arise out of the Agreement

Mr. Pack argues that even if the Agreement is a valid contract, the forum selection clause would not apply to Counts III and IV of SBL's Complaint because they are not claims that "arise out of" the contract. [Filing No. 10 at 13.] SBL did not respond to this argument, which Mr. Pack reiterated in his reply brief. [Filing No. 24 at 3.]

Helpful to the Court is *Dexter Axle Co. v. Baan USA, Inc.*, in which the Indiana Court of Appeals considered whether tort and statutory claims arose out of a contract such that they were subject to the contract's forum selection clause. 833 N.E.2d 43 (Ind. Ct. App. 2005). Quoting from the Seventh Circuit, the court stated that:

> the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*Id.* at 50 (quoting *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004)).

Much like the contract at issue in *Dexter*, the Agreement's forum selection clause encompasses "any claims arising out of this Agreement." [Filing No. 1-1 at 32.] Count III of the

Complaint is a claim for a breach of fiduciary duty and a violation of the Indiana Trade Secrets Act, [Filing No. 1-1 at 14-15], and Count IV of the Complaint is a claim for unjust enrichment. [Filing No. 1-1 at 16.] Like the tort and statutory claims at issue in *Dexter*, the fact that SBL alleges tort and statutory claims here does not mean that such claims do not arise out of the Agreement. To the contrary, the Complaint alleges that Mr. Pack breached his fiduciary duties and violated a statute "[w]hile serving as an independent contractor for SBL and immediately following termination," [Filing No. 1-1 at 14], and was unjustly enriched "by his wrongful conduct, as alleged herein [in the Complaint]," [Filing No. 1-1 at 16]. Both allegations clearly concern the Agreement and Mr. Pack's performance thereof. As such, the Court finds that Counts III and IV of SBL's Complaint arise out of the Agreement and are, therefore, subject to the forum selection clause.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **DENIES** Mr. Pack's Motion to Dismiss on all grounds. [9]. The Court requests that the Magistrate Judge confer with the parties at his earliest convenience regarding whether SBL continues to seek a preliminary injunction, and if so, to establish a briefing schedule.

Date: 1/4/2019

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**