UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SMALL BUSINESS LENDING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02712-JMS-TAB |
| | ) | |
| DAVID PACK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

In 1788, Alexander Hamilton wrote that "[t]he great and primary use of a court of equity is to give relief IN EXTRAORDINARY CASES." The Federalist No. 83 (Alexander Hamilton) (emphasis in original). In the context of preliminary injunctions, the notion that such a measure is in an extraordinary remedy has been reiterated time and time again, most recently by the U.S. Supreme Court in 2018. *See Benisek v. Lamone*, __ U.S. __, 138 S. Ct. 1942, 1943 (2018).

By its Motion for Preliminary Injunction, Plaintiff Small Business Lending, LLC ("SBL") has asked the Court for this extraordinary remedy by requesting that the Court enjoin Defendant David Pack from engaging in certain activities related to a 2018 independent contractor agreement between the two parties. [Filing No. 40.] In addition to SBL's Motion for Preliminary Injunction, two other Motions filed by SBL are currently pending before the Court: a Motion for Leave to File Amended Complaint, [Filing No. 56]; and a Motion to Strike, [Filing No. 65]. All three motions are fully briefed, and are now ripe for the Court's review.

The Court will first consider SBL's Motion to Strike. The Court will then turn to jurisdictional arguments that are peppered throughout the parties' briefs. Next, the Court will

consider the Motion for Preliminary Injunction. Lastly, the Court will take up SBL's Motion for Leave to File an Amended Complaint.

## I.
### MOTION TO STRIKE

SBL filed a Motion to Strike Mr. Pack's proposed findings of fact and related exhibit. [Filing No. 65.] SBL's first argument relates to the amount in controversy – SBL argues that Mr. Pack's use of the parties' settlement negotiations should be stricken because it violates Federal Rule of Evidence 408. [Filing No. 65 at 1.] Next, SBL argues that Mr. Pack's proposed findings of fact should be stricken because they "reflect[] a desire to attain summary judgment on a plethora of issues, when the only motion before the Court is whether or not to grant a measure of preliminary relief to Plaintiff." [Filing No. 65 at 2.] SBL gives the following examples in support if its second argument: Mr. Pack argues in his proposed findings that SBL has abandoned its claim related to the non-compete clause because "at this stage, comprehensive enforcement of the non-compete clause is not sought," [Filing No. 65 at 2]; Mr. Pack illegitimately argues that "he should not be restrained from holding himself out as an agent of SBL" which is "a finding/ruling that simply cannot be requested," [Filing No. 65 at 3]; and Mr. Pack asks "the Court to give him a blank check" by wanting "the right to use disseminate (sic) prospective borrower[s'] confidential personally-identifying data, along with proprietary documents," [Filing No. 65 at 3]. Lastly, SBL argues that Mr. Pack's proposed findings of fact should be stricken because his testimony indicates that the jurisdictional amount is not met. [Filing No. 65 at 3-4.]

In response, Mr. Pack argues that there was "nothing improper at all about providing the Court with SBL's $490,000 demand," because "the Seventh Circuit has explicitly held that Federal Rule of Evidence 408 would not preclude reference to settlement discussions when deciding jurisdictional questions," and because "SBL incorporated its demand into its sworn answers to Mr.

Pack's interrogatories." [Filing No. 66 at 1-2.] Regarding SBL's allegations as to jurisdiction, Mr. Pack argues that "SBL cannot narrow its claim so as to defeat jurisdiction once removal has occurred." [Filing No. 66 at 3.]

The Court begins by observing that SBL's Motion to Strike contains arguments that go beyond articulating possible grounds to strike portions of Mr. Pack's proposed findings of fact and wades into arguments as to why the Court should remand this case. Any such arguments are misplaced in a motion to strike and will not be considered in ruling upon the Motion. The Court will consider jurisdictional allegations in Part II, *infra*.

Turning to SBL's arguments in support of its Motion, the Court first considers whether an email containing a settlement offer from SBL should be stricken as an exhibit. On this point, SBL's argument is without merit. It is true that Federal Rule of Evidence 408 provides that evidence of compromise offers and negotiations are "not admissible. . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, settlement negotiations "can be considered 'to show the stakes' when determining whether the amount in controversy is met." *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012) (citing *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)).

SBL's other contentions in support of its Motion show that SBL disagrees with Mr. Pack's proposed findings of fact, not that such findings are inadmissible.[1] Had the Court wished to consider responses and replies to the proposed findings of fact, it would have ordered the parties to file such documents. It did not, and will not strike Mr. Pack's submission on the grounds that

---

[1] The Court also notes that SBL's failure to cite to the portions of Mr. Pack's proposed findings of fact with which it takes issue made the Court's task in considering such arguments unnecessarily cumbersome.

SBL disagrees with it. Moreover, SBL misapprehends the legal effect of findings of fact at this stage of litigation. "[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, SBL's argument that Mr. Pack's findings of fact are an attempt to attain summary judgment is misplaced.

For the reasons set forth herein, SBL's Motion to Strike, [Filing No. 65], is **DENIED**.

## II.
### JURISDICTION

The Court next addresses the parties' arguments concerning jurisdiction. Following the evidentiary hearing in this matter on May 13, 2019, SBL submitted a "Supplementation as to Law," in which it contends that after the evidentiary hearing, it became "apparent" that Mr. Pack's "initial submissions to this Court were invalid as to satisfaction of the jurisdictional amount at issue." [Filing No. 58 at 1.] SBL goes onto argue that "it is apparent that the actual monetary value of the claim at the time of removal (and, to the present, given the current state of discovery; if discovery shows otherwise, however, then, at that time, diversity jurisdiction may exist) was approximately $20,038, far less than [Mr.] Pack's conjectures." [Filing No. 58 at 2.]

In response, Mr. Pack alleges that SBL's Complaint "included a prayer for disgorgement of all 'ill-gotten gains,' which SBL defined as all 'compensation or consideration Pack received for Broker Financing services he provided between April 3, 2018 to the conclusion of this action,' plus other damages." [Filing No. 64-1 at 1-2.] Mr. Pack further contends that SBL sought $490,000 as a settlement demand and has represented to the Court that the amount in controversy exceeds the jurisdictional amount. [Filing No. 64-1 at 2.] Lastly, Mr. Pack contends that the amount in controversy should include "the estimated cost to him" to comply "with a noncompete

in the business-lending field from the filing of the Complaint until July 2020" – the end of the term of the alleged non-compete agreement.  [Filing No. 64-1 at 2.]

It is well settled that "the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed." *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997) (citations omitted).  For cases that have been removed from state to federal court, "determination as to whether the $75,000 minimum is actually in controversy is made at the time of the removal." *Bush v. Roadway Express, Inc.*, 152 F. Supp. 2d 1123, 1125 (S.D. Ind. 2001). "[I]f the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction." *Id.* at 1116.  Moreover, a party seeking removal "does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)).  "Whether damages will exceed $75,000 is not a fact but a prediction, and with respect to that subject the court must decide whether to a legal certainty . . . the claim is really for less than the jurisdictional amount." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (quotations omitted).  The "removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover," and may do so . . . . by reference to the plaintiff's informal estimates or settlement demands." *Id.* at 541-42.

In this case, Mr. Pack removed this matter on the basis of diversity jurisdiction on August 30, 2018.  [Filing No. 1.]  In response to the Court's Order noting deficiencies in the initial Notice of Removal, [Filing No. 5], Mr. Pack filed an Amended Notice of Removal the next month, [Filing No. 8].  SBL responded to the Amended Notice of Removal and argued that the amount in

controversy had not been satisfied. [Filing No. 13.] Mr. Pack responded in turn, arguing that the amount in controversy exceeded $75,000 exclusive of interest and costs on the date of removal because Mr. Pack's cost of complying with the injunction SBL seeks would exceed the jurisdictional amount. [Filing No. 13 at 3.] On October 18, 2018, the Court ruled that Mr. Pack had discharged his obligation to set forth a plausible, good-faith estimate that the amount in controversy in this matter exceeds the statutory threshold, exclusive of interest and costs, and stated that SBL should seek remand by November 2, 2018 if it continued to believe that remand was required. [Filing No. 17.] SBL did not file any such motion.

As a starting point, SBL's argument that current or subsequent discovery affects or will affect this Court's jurisdiction is without merit. *Grinnell*, 121 F.3d at 1116 (citations omitted) ("the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction"). As for SBL's contention that "after the May 13, 2019 evidentiary hearing," it became "apparent" that Mr. Pack's submissions to the Court regarding jurisdiction were invalid, [Filing No. 58 at 1], SBL states – without citation to the record or any indication as to where such a figure was derived – that all that "was sought" was disgorgement in the amount of $12,429. To the extent that SBL argues that the only damages it sought by its complaint was disgorgement, the Court notes that its complaint also requested compensatory damages for breach of contract, breach of fiduciary duties and a violation of Indiana Trade Secrets Acts [Filing No. 1-1 at 14], along with "all revenues generated from Broker Financing activity by Pack . . . from April 2, 2018 through the conclusion of the instant litigation," [Filing No. 1-1 at 14].

The Court has already issued an order determining that the amount in controversy was satisfied at the time of removal. Although SBL asks the Court to revisit its October 24, 2018 finding, nothing in its Supplementation as to Law alters the Court's earlier finding that Mr. Pack

had met his burden of establishing what SBL stands to recover.  To the contrary, Mr. Pack's recent submission of SBL's settlement discussions adds credence to his earlier contention that the amount in controversy is satisfied in this matter.  As such, the Court finds that it continues to have jurisdiction to hear this case, and now turns to the merits of SBL's Motion for Preliminary Injunction.

### III.
### MOTION FOR PRELIMINARY INJUNCTION

#### A.  Preliminary Injunction Standard

"In the case of the usual preliminary injunction, the plaintiff seeks to enjoin, pending the outcome of the litigation, action that [it] claims is unlawful." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314 (1999).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (citation omitted).  "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).  Because the merits of the underlying litigation are not at issue at this stage, "the reluctance to disturb the status quo prior to trial on the merits is an expression of judicial humility . . . [that] enables the court to stay relatively neutral in the underlying legal dispute." *Id.* at 945-46.

The purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. Texas*, 451 U.S. at 395.  "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.*

"To obtain a preliminary injunction, the moving party must show that [its] case has 'some likelihood of success on the merits' and that [it] has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)). "If the moving party meets these threshold requirements, the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "The district court must also consider the public interest in granting or denying an injunction." *Stuller*, 695 F.3d at 678.

## B. Background

The background of this case was set forth in the Court's Order dated January 4, 2019, which the Court incorporates by reference. [Filing No. 26 at 3.] In addition, the Court's understanding of the background of this matter was informed by an evidentiary hearing that was held on May 13, 2019, [Filing No. 57], after which the parties submitted proposed findings of fact and conclusions of law, [Filing No. 59; Filing No. 64]. For the purposes of deciding the Motion for Preliminary Injunction, the Court summarizes the facts of this case as follows:

### 1. SBL's Business Model

SBL is a financial brokerage firm that works with small businesses to assist them with acquiring loans. SBL is owned by Robin Green[2] and conducts business throughout the United States. In order to identify and reach potential leads, SBL purchases data, including telephone

---

[2] Ms. Green was formerly known as Robin Cano. In the interests of consistency, the Court will refer to her as Ms. Green throughout this Order.

numbers, and uses an auto-dialer to leave voicemails for business owners. There is nothing secret about prospective borrowers' phone numbers or names as they may be purchased on a non-exclusive basis. The prospective borrowers' telephone number goes "stale" after 30 to 60 days of purchase.

Business owners may respond to SBL's message by leaving their telephone numbers on a voicemail to SBL. SBL will then refer the telephone number to an independent contractor via email.

SBL also purchased trigger leads, which are generated when a business' credit is ran. Multiple brokers are able to purchase the trigger leads and they are not, therefore, exclusive to SBL.

SBL also used survey leads, whereby they send business owners a survey and at the end, the survey would ask the business owner if he or she was interested in working capital. If so, the business owner could leave his or her contact information, which would be sent to an independent contractor via email for follow-up.

SBL's independent contractors then gather the required application information from business owners seeking to borrow money ("Borrowers"). Borrowers fill out an application that includes the Borrower's Social Security number, date of birth, and personal address and the business' tax ID number and address. In addition, Borrowers must submit six months of bank statements and merchant processing statements.

SBL's independent contractor gathers and screens the required documents and submits them to Ms. Green. Ms. Green then contacts potential lenders.

SBL provides scripts to independent contractors as part of its training program for their interactions with Borrowers' employees.  In addition, SBL provides independent contractors with a step-by-step outline of the process from the time the independent contractor receives a lead.

            *2.    The Agreement between SBL and Mr. Pack*

On or about April 4, 2018, Mr. Pack and SBL entered into an independent contractor agreement (the "Agreement").  [Filing No. 1-1 at 32.]  The Agreement provides, in relevant part, as follows:

> This Agreement (the "Agreement") is made on 04/03/2018, by and between Small Business Lending LLC, (the "Company"), located at 7206 Franklin Parke Blvd, Indianapolis, Indiana 46259 in the County of Marion , and David W. Pack, (the "Independent Contractor" or "Contractor") located at of 163 Caroway Ct, Spartanburg, Georgia 29303

[Filing No. 1-1 at 19.]  Thereafter, the Agreement states that "[t]he Independent Contractor is secured to provide the services described below at the Company's principal place of business as aforementioned, or from the Contractor's principal place of business, if applicable, as aforementioned."  [Filing No. 1-1 at 19.]

The Agreement contains a provision regarding proprietary information, which provides, in part, as follows:

> All rights, title and interest of any and all kind and nature whatsoever in and to the Proprietary Information made, written, discussed, developed, secured, obtained or learned by the Independent Contractor during the term of its relationship with the Company or always immediately following termination of that relationship, shall be the sole and exclusive property of the Company for any purpose or use whatsoever as it deems necessary or fit, and shall be disclosed promptly by the Independent Contractor to the Company.

[Filing No. 1-1 at 22.]  In the course of Mr. Pack coming on board as an independent contractor, Ms. Green disclosed this portion of the Agreement with Mr. Pack.

The Agreement also contains a non-solicitation clause which provides that the independent contractor shall not solicit or attempt to solicit customers or clients of the company "throughout the duration of this Agreement and for a period of (sic) immediately following the termination of this Agreement." [Filing No. 1-1 at 23.]

The Agreement contains a non-compete clause which provides as follows:

**_Non-Compete Clause_**

The Independent Contractor herein agrees not to participate in any activity or action that may be deemed of a competitive nature with any activity of the Company during the course of their relationship and for a period of 2 years after the termination of this Agreement. Therefore, for the purpose of this paragraph, competitive activity thus encompasses forming and/or making plans to form a business entity that may be seen as being competitive with any business of the Company.

During and after the Contractor's contract period with the Company, in the State of North Carolina, and for a period of 2 years following termination of employment, however caused, the Contractor, or his/her Subcontractors, shall not seek or gain employment with any newly formed business (business formed after termination of this Agreement) that is in competition with the Company, its subsidiaries or affiliates within All States described as United States or within a All

Businesses Within The United States mile radius of the Company and the aforementioned business location.

[Filing No. 1-1 at 23-24.]

The Agreement also provides that the "Independent Contractor is or shall remain open to conducting similar tasks or services for the Company, which may not be listed or described below, or for entities other than the Company and thus holds himself or herself out to the public to be a separate business entity." [Filing No. 1-1 at 19.] Further, regarding the scope of work, the Agreement provides that "the Independent Contractor shall retain sole and absolute discretion in the manner and means for the carrying out of his/her activities and responsibilities contained herein this Agreement," [Filing No. 1-1 at 19], and that the "Independent Contractor shall have full discretion within the Scope of Work," [Filing No. 1-1 at 20.]

Regarding documents, the Agreement also provides that:

**DOCUMENTS, RECORDS OR BOOKS**
Any and all documents, records or books which may be related to the Scope of Work, as set forth herein this Agreement, shall be maintained by the Independent Contractor at the Independent Contractor's principal place of business and open to inspection by the Company during regular working business hours. The documents, records and/or books to which the Company shall be entitled to inspect and receive copies of include, but are not limited to, any and all contract documents, change/purchase orders and work which has been authorized by the Company on existing or any potential project that are related to this Agreement.

[Filing No. 1-1 at 20.] The Agreement further provides as follows:

**RETURN OF COMPANY PROPERTY**
Upon the termination of this Agreement, or as per the request of either party, each party shall promptly and immediately deliver to the other party any and all property in its possession or under its care and control belonging to the other party, including but not limited to, proprietary information, customer names and lists, trade secrets, intellectual property, computers, equipment, pass keys, company identification, tools, documents, plans, recordings, software, and all related records and/or accounting/financial information.

[Filing No. 1-1 at 26.]

The Agreement also contains a two paragraph non-recruit clause. The first paragraph provides that the independent contractor "shall not throughout the duration of this Agreement and for a period of 2 year (sic) immediately following the termination of this Agreement, either directly or indirectly, recruit any of the Company's employees, customers, clients or management for the purpose of any outside business." [Filing No. 1-1 at 24.] The second paragraph of the non-recruit clause mirrors verbatim the second paragraph of the non-compete clause. [Filing No. 1-1 at 24.]

    *3. Mr. Pack's Engagement with SBL*

Mr. Pack began receiving emails containing Borrower's telephone numbers on April 11, 2018.

On multiple occasions, Ms. Green discussed Mr. Pack's job duties and performance with him and coached him over the phone. He eventually began asking her about how the business worked. Initially, Mr. Pack aggressively pursued leads, but after a time, Mr. Pack was no longer addressing his leads or sending loan applications to Borrowers. Mr. Pack asked Ms. Green whether

he could generate his own leads to SBL, but he never provided any. During his employment with SBL, Mr. Pack generated six loans and earned $16,849 in commission, not counting a loan to Circle Electric.

Mr. Pack generated a loan from ILawn LLC for equipment financing, but ILawn's initial payment check to SBL bounced. Mr. Pack generated a loan to Shaam Inc, but something occurred with the lender and the loan did not go through.

Until March 2019, Mr. Pack's Linkedin page stated that he started working for Sprout Lending in May 2018 and Commodo Financial in June 2018. Sprout Lending and Commodo Financial are both competitors of SBL. Mr. Pack's Linkedin page also represented that he worked for SBL until March 2019, which he did not.

Mr. Pack received his last email containing Borrowers' telephone numbers on July 2, 2018. The same day, Ms. Green told Mr. Pack to take a week off of work and call her back on July 9, 2018. However, Mr. Pack did not contact Ms. Green on the 9th. As of July 24, 2018, Ms. Green still had not heard from Mr. Pack and began researching his activities. Ms. Green found that Mr. Pack was soliciting SBL's independent contractor Zebulon Pack to leave SBL.

On July 3, 2018, Mr. Pack registered Pack Consulting LLC with the Secretary of State of South Carolina. On July 13, 2018, Mr. Pack registered Commodo, LLC with the Secretary of State of South Carolina.

On July 24, 2018, Ms. Green sent Mr. Pack a letter terminating his employment with SBL. Among other things, the letter noted that Mr. Pack breached the "Non-Partnership or Ownership and Business Opportunity Clause" of the Agreement by registering Pack Consulting LLC, and stated that the non-compete clause would be enforced for a period of two years following the termination of the Agreement. Additionally, the letter requested that Mr. Pack return all company

property and stated that trade secrets, business plans and procedures, client contact lists and other confidential information could not be used by Mr. Pack in any way. Mr. Pack did not return all the applications, the lead information, or any prospective client information to Ms. Green.

On July 24, 2018, Ms. Green also cut off Mr. Pack's access to his SBL email account and his access to SBL's lead system.

### C. Discussion

In support of its Motion for Preliminary Injunction, SBL argues that the following conduct by Mr. Pack substantiates the need for preliminary injunctive relief:

- after "obtaining access to the SBL program, Mr. Pack immediately began using it so as to facilitate leads for a competitor of SBL" – Sprout Lending;

- in June 2018, Mr. Pack started a website to compete with SBL;

- in July 2018, Mr. Pack started two entities to compete with SBL;

- Mr. Pack solicited another SBL representative to quit and work with him; and

- "Mr. Pack has never returned the client applicant/borrower data he acquired while an SBL representative." [Filing No. 41 at 6.]

Based upon this conduct, SBL argues that the Court should issue a preliminary injunction enjoining Mr. Pack from engaging in five categories of activities: (1) "[p]ossessing or using information provided to him while working for SBL, consisting of proprietary financial or other data;" (2) "[d]isclosing information provided to him while working for SBL, consisting of proprietary financial or other data;" (3) "[s]oliciting SBL employees to leave SBL;" (4) "[e]ngaging in the business of financing business loans so as to be competitive with SBL;" and (5) "[h]olding himself out as a representative of SBL, including, but not limited to, on his LinkedIn account." [Filing No. 41 at 1.]

"A preliminary injunction is an extraordinary remedy." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). It is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (citations and quotations omitted). "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, __ U.S. __, 138 S. Ct. at 1944 (holding that "plaintiffs' unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request").

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. *Univ. Texas*, 451 U.S. at 395. "To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) (quoting *Manitou*, 549 F.3d at 1085-86).

In the "threshold phase" a party seeking a preliminary injunction must satisfy three requirements by showing that "(1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana*, 889 F.3d 432, 437 (7th Cir. 2018) (quoting *Girl Scouts*, 549 F.3d at 1086). "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citation and quotation omitted). "However, if the plaintiff passes that threshold, 'the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and

consider whether an injunction is in the public interest.'" *Id.* at 364 (quoting *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)).

SBL moves for preliminary injunction, arguing that it meets all of the requirements for its issuance. [Filing No. 40.] Mr. Pack opposes that motion. [Filing No. 51]. The Court considers each element in turn.

### 1. Likelihood of Suffering Irreparable Harm

SBL contends that it has suffered the following instances of irreparable harm: (1) "clients have left SBL along with the prospect for subsequent loans that an ongoing client offers," [Filing No. 41 at 9]; (2) SBL "is exposed to vast liability arising from further impermissible disclosure" of Borrowers' "personally-identifying and financial data," [Filing No. 41 at 10]; (3) Mr. Pack would take "unfair advantage of SBL and its president, Robin Green, who, good faith, permitted Mr. Pack unfettered access to the treasure trove of data concerning SBL's small business client data and SBL loan generation processes," [Filing No. 41 at 12]; and (4) "SBL has suffered the irreparable harm of people thinking him connected to SBL from July 24, 2018 through March 15, 2019, and will suffer more irreparable harm if he does something like this in the future," [Filing No. 41 at 12].

In response, Mr. Pack argues that (1) SBL has failed to show that it will suffer irreparable harm, pointing out that SBL waited seven months to seek a preliminary injunction, indicating a reduced need for such a drastic action, [Filing No. 51 at 3], (2) the reference to SBL has been removed from his LinkedIn page, [Filing No. 51 at 4], and (3) SBL has not pointed to any attempts by Mr. Pack to solicit employees since the lawsuit was filed, [Filing No. 51 at 4].

The moving party must demonstrate that it "will likely suffer irreparable harm absent obtaining preliminary injunctive relief." *Whitaker*, 858 F.3d at 1044-45 (7th Cir. 2017) (citing

*Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 787 (7th Cir. 2011)).  Regarding whether a harm is "likely," the Seventh Circuit has explained that a showing of likelihood "requires more than a mere possibility of harm.  It does not, however, require that the harm actually occur before injunctive relief is warranted.  Nor does it require that the harm be certain to occur before a court may grant relief on the merits."  *Id.* at 1045 (citations and quotations omitted).  The Supreme Court has cautioned that issuing a preliminary injunction "based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, (2008).  With regard to whether the harm is "irreparable," the Seventh Circuit has explained that "harm is considered irreparable if it cannot be prevented or fully rectified by the final judgment after trial."  *Whitaker*, 858 F.3d at 1045.

The key problem with most of the categories of harm set forth by SBL is that SBL has failed to show that they are likely.  For example, SBL's suggestion that it "is exposed to vast liability" arising from "impermissible disclosure" of personally identifying information is the type of speculative and remote future injury that the Seventh Circuit has found to be insufficient to justify a preliminary injunction. *See Michigan*, 667 F.3d at 788 (quoting 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1, at 154–55 (2d ed.1995)) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown").  SBL has failed to demonstrate that such suits are an existing actual threat.  Similarly, SBL's suggestion that it has suffered irreparable harm from Mr. Pack listing it as an employer on Linkedin until earlier this year is without any support that such a harm is an existing actual threat.

With regard to SBL's contention that it has "suffered irreparable harm as . . . clients have left SBL along with the prospect for subsequent loans that an ongoing client offers," [Filing No. 41 at 9], the Court notes that threats to an organization's goodwill can constitute irreparable harm. In *Girl Scouts*, for example, the Seventh Circuit held that a threat to the goodwill enjoyed by a Girl Scout council if it lost some of its territory was a harm that was both real and irreparable. 549 F.3d at 1089 (holding that a "serious risk to the organization's significant goodwill," "can constitute irreparable harm"). But *Girl Scouts* is distinguishable from the situation faced by SBL. In that case, the Seventh Circuit found that the organization relied heavily upon donations – "tens of millions of dollars in donations" – and that removing 60 percent of the organization's jurisdiction would damage the organization's ability to fundraise and, indeed, had already done so. *Id*. at 1089. By contrast, at the hearing, SBL offered evidence that a handful of loans with which Mr. Pack had been involved had failed and, in her affidavit accompanying SBL's Motion, Ms. Green asserted that four clients had been diverted elsewhere. This harm is a far cry from constituting a serious risk to SBL's goodwill, both in terms of scope and character. For starters, any loss is significantly more minor than that described in *Girl Scouts*. Second, SBL has not presented any evidence that diverted business resulted in customer confusion or the intangible loss of goodwill. Instead it has presented evidence of four specific and relatively minor economic losses which do not portend the collapse of SBL and are therefore not enough to justify an injunctive relief. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("economic loss generally will not sustain an injunction," but "a damages remedy may be inadequate if it comes 'too late to save plaintiff's business'"). Lastly, the Court notes that SBL has failed to show that any harm cannot be rectified by a final judgment after trial.

For the foregoing reasons, the Court holds that SBL has not shown that it will suffer irreparable harm in the period before the resolution of its claim. This conclusion compels the denial of SBL's Motion, as one of the threshold requirements for the issuance of a preliminary injunction has not been established. The Court is mindful, however, of the Seventh Circuit's encouragement to provide analysis as to each element of the threshold inquiry, so it addresses those in turn. *Girl Scouts*, 549 F.3d at 1087 ("Where, as here, a district court decides that a party moving for a preliminary injunction has not satisfied one of the threshold requirements, we have encouraged the court to conduct at least a cursory examination of all the aforementioned preliminary injunction considerations . . . . Doing so expedites our review and helps to protect the interests of the parties") (citations omitted). As such, the Court will discuss the two remaining elements below.

### 2. *Adequacy of Traditional Legal Remedies*

SBL argues that "there is no adequate remedy at law," for its claim related to Mr. Pack's disclosure of "SBL-derived data," as "Mr. Pack has suggested he is of limited means." [Filing No. 41 at 10.]

In his response, Mr. Pack argues that an adequate remedy at law exists, contending that SBL's claim that he lacks adequate means "must fail" given his military benefits, self-employment, and spouse who works full time. [Filing No. 51 at 4.]

"[A] party seeking a preliminary injunction must demonstrate, among other things, that traditional legal remedies, such as money damages, would be inadequate." *D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016). "The absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). To demonstrate that it has no adequate remedy at law, the moving party need not

"demonstrate that the remedy be wholly ineffectual," but "must demonstrate that any award would be "seriously deficient as compared to the harm suffered." *Whitaker*, 858 F.3d at 1046 (citations omitted). "The normal remedy for breach of contract is an award of damages." *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). However, the Seventh Circuit has held that "there are cases in which the normal remedy for a breach of contract, namely damages, is inadequate, and those are cases in which the victim of an alleged breach can seek preliminary relief." *Chicago United Indus.*, 445 F.3d at 945. Damages "are an inadequate remedy" in cases involving a "defendant's lack of solvency" and in cases where "quantifying the injury to the victim of the breach" is difficult. *Miller*, 87 F.3d at 230.

The only argument SBL sets forth as to why there is no adequate remedy at law in this case is because Mr. Pack "has suggested he is of limited means." [Filing No. 41 at 10.] It is true that damages may be "unobtainable" from a defendant who becomes "insolvent before a final judgment can be entered and collected," *Roland Mach.*, 749 F.2d at 386, but SBL's vague conjecture on this point does not establish any likelihood of insolvency. Indeed, SBL does not even argue that Mr. Pack is or is likely to become insolvent, but only that he is of limited means. Nor did any testimony or evidence from the evidentiary hearing point to a conclusion that Mr. Pack is insolvent. *Seaga Mfg., Inc. v. Intermatic Mfg., Ltd.*, 2013 WL 773037, at *6 (N.D. Ill. Feb. 28, 2013) (finding that "no testimony" at an evidentiary hearing "addressed any capital assets which [the defendant] may hold which could be attached to satisfy a future judgment in this case or the existence, or lack thereof, of some form of liability insurance"). Accordingly, SBL has not carried its burden to show that it has no adequate remedy at law based on insolvency.

Moreover, it is clear that in this case, the damages allegedly suffered by SBL are pecuniary in nature and, therefore, the law could provide a remedy in the form of monetary damages. For

example, as set forth at the hearing, SBL purchases the sources of its leads and multiple other brokers are able to purchase the same data. Despite SBL's argument that such data constitutes trade secrets, [*See* Filing No. 60 at 81 (Q – "You say it is a trade secret for the software programs and the data that you purchase from third parties, right?" A – from Ms. Green – "Yes)], Ms. Green's testimony shows that the data at issue in this case was purchased from third parties. There is no evidence to suggest that Mr. Pack could not have purchased the data himself had he paid the appropriate subscription fees. Accordingly, to the extent that Mr. Pack misused or misappropriated data he received from SBL, SBL can be compensated in the form of damages after trial.

### 3. Likelihood of Success on the Merits

SBL argues that it is "SBL is reasonably likely to succeed" on its claims against Mr. Pack relating to his "continued retention, possession and use of SBL-derived data," [Filing No. 41 at 9]; SBL is "reasonably likely to prevail" on its claim related to Mr. Pack's disclosure of "SBL-derived data," [Filing No. 41 at 10]; "SBL is reasonably likely to prevail" on its claims related to Mr. Pack "engaging in the business of financing loans so as to be competitive with SBL" "in light of Mr. Pack actively undermining SBL, including with respect to four financing transactions SBL had in place," [Filing No. 41 at 11]; and that SBL "is reasonably likely to prevail" on its claim related to Mr. Pack holding himself out as an SBL representative because "the equities are all" in its favor, [Filing No. 41 at 12].

In response, Mr. Pack argues that SBL is unlikely to succeed on the merits of its claims because it cannot show a fiduciary relationship given the Agreement, [Filing No. 51 at 5], the Agreement is too inconsistent and full of errors to allow SBL to prevail on its contract claims against Mr. Pack, [Filing No. 51 at 5-6], SBL has failed to show that the "non-competition, non-solicitation, and non-recruitment provisions" are reasonable in scope, [Filing No. 51 at 6-7], SBL

does not have a protectible interest to begin with because SBL "seeks to prohibit contact with SBL customers that Mr. Pack did not even work with during his brief tenure," [Filing No. 51 at 7], and SBL's claim under the Indiana Uniform Trade Secrets Act fails because SBL has not shown that he disclosed or used a trade secret and SBL's customer lists are derived from public data and are not, therefore, a trade secret, [Filing No. 51 at 9-10].

"The likelihood of success on the merits is an early measurement of the quality of the underlying lawsuit." *Michigan*, 667 F.3d at 788. "The likelihood of success requirement is a low threshold" under which the movant "must only show that its claim's chance of success is 'better than negligible.'" *HH-Indianapolis*, 889 F.3d at 437; *see also AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002) ("In the first phase of the analysis, the court decides only whether the plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning").

Excluding its requests for injunctive relief, SBL brought three claims against Mr. Pack: breach of contract, breach of fiduciary duties/violation of the Indiana Trade Secrets Act, and unjust enrichment. [Filing No. 1-1 at 13-16.]

      i.   SBL's Breach of Contract Claim

Turning first to Mr. Pack's breach of contract claim, under Indiana law such a claim requires: "(1) the existence of a contract, (2) the defendant's breach thereof, and (3) damages." *Allen v. Clarian Health Partners, Inc.*, 955 N.E.2d 804, 808 (Ind. Ct. App. 2011). The Court noted in its January 2019 Order at the Motion to Dismiss stage that the "non-compete clause of the Agreement discusses non-competition in the state of North Carolina – a curious provision considering that Mr. Pack resided in South Carolina at time the Agreement was signed." [Filing No. 26 at 11.] SBL did not present any evidence at the hearing or in support of its pending Motion

indicating that Mr. Pack engaged in competition with SBL in North Carolina. As such, the Court maintains grave doubts about Mr. Pack's ability to prevail on this major component of his breach of contract claim.

        ii.    SBL's Breach of Fiduciary Duty/Violation of the Indiana Trade Secrets Act Claim

The Court next examines Mr. Pack's alleged breach of the Indiana Trade Secrets Act, (the "Act"). The Court identifies two problems with SBL's allegations concerning the Act. First, the Court is not persuaded that the data Mr. Pack is alleged to have used qualifies as a trade secret. The Act defines a "trade secret" as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code Ann. § 24-2-3-2. A protectable trade secret has four characteristics: "(1) information, (2) which derives independent economic value, (3) is not generally known, or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy." *Bodemer v. Swanel Beverage, Inc.*, 884 F. Supp. 2d 717, 723 (N.D. Ind. 2012) (quoting *Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 179 (Ind. Ct. App. 2007)). Indiana courts have considered the issue of whether "customer information constitutes a trade secret" and have held that such a determination "depends upon the facts of each individual case." *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876 (Ind. Ct. App. 1998) (holding that a "policyholder list of an insurance company, that information, which can include names of customers, policy coverage, premium amounts, and expiration dates, is not a trade secret"); *see also U.S. Land Servs., Inc. v. U.S.*

*Surveyor, Inc.*, 826 N.E.2d 49, 64 (Ind. Ct. App. 2005) (holding that information in a surveyor database, some of which was "readily available over the Internet and through other sources in the public domain," and some of which "such as the surveyor ratings, client histories, and prospect response ratings, are not readily available" was a trade secret under the Act); *N. Elec. Co. v. Torma*, 819 N.E.2d 417, 426 (Ind. Ct. App. 2004) (holding that information "already within the public domain" was a trade secret under the Act where an individual "invested considerable time and effort in the data compilation; specifically, he stated that he gathered the data over a period of more than seven years and devoted at least 1,892 hours to organizing the data"). The testimony elicited at the hearing reveals that the bulk of the trade secrets alleged by SBL are telephone numbers. Given the ready availability of such information, the Court is not persuaded that there is even a low threshold of success on the merits. Similarly, the Court is not persuaded that Ms. Green's scripts would constitute a trade secret, because as soon as a script is read to a Borrower, the information in the script could be obtained by the Borrower. *Harvest Life*, 701 N.E.2d at 876 (noting that the "rationale which has been followed" in cases holding that policyholder lists are not trade secrets "is that the information could be obtained from the policyholder himself, from the policy, or from other materials provided to the policyholder by the insurance company"). Lastly, the Court finds no basis in Indiana law for SBL's proposition, suggested at the evidentiary hearing, that honesty and integrity are a trade secret.

Even if SBL had identified a trade secret – which it has not – Indiana Courts have held that the Act is an "improper vehicle" to restrain competition. In *Steenhoven v. College Life Insurance Company of America*, the Indiana Court of Appeals observed that "[t]he real thrust" of an insurance company's argument against its former agent was not that he disclosed a customer list, but rather that the former agent "used such list to benefit economically." 460 N.E.2d 973, 975 n.7 (Ind. Ct.

App. 1984).  As such, the court observed that the insurance company "seemingly seeks not to protect a trade secret, but rather, to prevent competition by its former agent."  *Id*. at 975 n.7.  Insofar as that was the case, the Indiana Court of Appeals concluded that the Act was "an improper vehicle therefor.'  *Id*.  Fourteen years later, the Court of Appeals cited to *Steenhoven* and repeated its observation – finding that a company sought "to prevent competition by its former agent more than it [sought] to protect a trade secret."  *Harvest Life*, 701 N.E.2d at 876.  Here too, the Court observes that SBL appears far more concerned with competition from Mr. Pack than with protecting any sort of trade secret.  As such, the Act is an improper vehicle for SBL's claim.

For the foregoing reasons, the Court determines that SBL does not have a reasonable likelihood of success on its Indiana Trade Secrets Act claims.

> iii.  <u>SBL's Unjust Enrichment Claim</u>

The Indiana Supreme Court has stated that unjust enrichment is "also referred to as quantum meruit, contract implied-in-law, constructive contract, or quasi-contract," which is a "legal fiction invented by the common-law courts in order to permit a recovery . . . where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise."  *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (citation and quotations omitted).  In addition, Indiana courts have held that the "existence of an express contract precludes a claim for unjust enrichment because: (1) a contract provides a remedy at law; and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law."  *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011) (citing *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004)).  Although Indiana recognizes an exception to this rule in instances "when an express contract does not fully address a subject," *id*. at 998, SBL does not argue in

support of its Motion that such an exception applies here. As such, the Court determines that SBL does not have a reasonable likelihood of success on its unjust enrichment claims.

The Court only proceeds to the balancing step of the analysis if a plaintiff satisfies all requirements of the "threshold phase" for obtaining a preliminary injunction. *Girl Scouts*, 549 F.3d at 1086; *see also GEFT*, 922 F.3d at 368 (quoting *Valencia*, 883 F.3d at 966 ("If it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms")). Because the Court has concluded that SBL has failed to carry its burden on all of the threshold requirements for obtaining injunctive relief, any balancing inquiry would be futile. SBL's Motion for Preliminary Injunction, [Filing No. 40], is **DENIED**.

## IV.
### MOTION TO FILE AMENDED COMPLAINT

On March 4, 2019, SBL filed a Motion for Leave to Amend its Complaint to add Resolve Holdings Corporation and Commodo, LLC as defendants. [Filing No. 37.] In opposition to SBL's first request to amend the complaint, Mr. Pack argued that he would be prejudiced by the late addition of the parties, [Filing No. 38 at 2], and that amendment would be futile because the proposed amended complaint did not allege the new parties' citizenship and personal jurisdiction is lacking, [Filing No. 38 at 3]. In reply, SBL argued that two new parties would "scarcely add to the complexity of the case" and that "Mr. Pack's diversion of SBL clients on behalf of Resolve Holdings/Sprout, which impacted SBL in this jurisdiction, certainly seems to bring that firm within the reach of Indiana's long-arm law and rule." [Filing No. 43 at 2-3.]

On April 18, 2019, the Court denied SBL's Motion because its "proposed amended complaint fails to properly allege the citizenship of the two new proposed Defendants." [Filing

No. 52 at 1.] The Court further noted that Mr. Pack's contentions regarding personal jurisdiction were for the newly added defendants to raise at the appropriate time.

On May 1, 2019, SBL timely filed its Renewed Motion for Leave to Amend Complaint to Add Resolve Holdings Corporation, d/b/a Sprout Lending and Commodo, LLC as Parties Defendant. [Filing No. 56.] However, the Court notes the following issues with the jurisdictional allegations in SBL's proposed Amended Complaint:

- SBL does not properly allege the citizenship of a corporation. A corporation is deemed a citizen of any state where it is incorporated and a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 676 (7th Cir. 2006) (a corporation has two places of citizenship: where it is incorporated and where it has its principal place of business). All courts "agree that corporations have one 'principal' place of business for purposes of 28 U.S.C. § 1332(c)(1)," *Metro. Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991), and SBL cannot allege two, as it has done.

- SBL does not properly allege the citizenship of an unincorporated association. The citizenship of an unincorporated association, such as a limited liability company or "LLC," is "the citizenship of all the limited partners, as well as of the general partner." *Hart v. Terminix Int'l*, 336 F.3d 541, 542 (7th Cir. 2003). "[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Id.* at 543. Asserting that all partners are citizens of "X" or that no partners are citizens of "X" is insufficient. *See Peters v. Astrazeneca LP*, 224 Fed. Appx. 503, 505 (7th Cir. 2007) (noting the insufficiency of a limited partnership asserting that none of its partners were citizens destroying diversity "rather than furnishing the citizenship of all of its partners so that [the court] could determine its citizenship").

- SBL does not properly allege the amount in controversy. The amount in controversy must exceed "$75,000, exclusive of interest and costs." 28 U.S.C. § 1332. The "exclusive of interest and costs" language must be included in the amount in controversy allegation.

- SBL has alleged the "residence" of an individual, rather than the individual's "citizenship." An allegation of residence is inadequate to establish diversity jurisdiction. *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998). Residency and citizenship are not the same, and it is the latter that matters for purposes of diversity. *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002). An individual's citizenship for purposes of

diversity jurisdiction "is the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002).

- SBL makes several of its jurisdictional allegations based on Mr. Pack's representations. But jurisdictional allegations must be made on personal knowledge, not on information and belief, to invoke the subject matter jurisdiction of a federal court. *See America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) (only a statement about jurisdiction "made on personal knowledge has any value" and a statement made "'to the best of my knowledge and belief' is insufficient" to engage diversity jurisdiction "because it says nothing about citizenship"). "Conclusional allegations are insufficient. A court needs to know details, such as the state of incorporation and principal place of business of each corporate party." *State St. Bank & Trust Co. v. Morderosian*, 234 F.3d 1274 (7th Cir. 2000).

In holding SBL to the standards the Court expects from all litigants, the Court is not being hyper-technical: Counsel has a professional obligation to analyze subject-matter jurisdiction, *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012), and a federal court always has a responsibility to ensure that it has jurisdiction, *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). The Court must know the details of the underlying jurisdictional allegations because parties cannot confer jurisdiction on the Court simply by stipulating that it exists. *See Evergreen Square of Cudahy v. Wisconsin Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("the parties' united front is irrelevant since the parties cannot confer subject-matter jurisdiction by agreement…and federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*").

Federal Rule of Civil Procedure 15(a) notes that leave to amend a complaint should be freely given "when justice so requires." The Seventh Circuit has recognized, however, that "such leave can be legitimately denied where there has been undue delay, dilatory motive on the part of the movant, repeated failure to cure previous deficiencies, and where amendment would be futile." *McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380, 385 (7th Cir. 1996). "An amendment is considered futile if, for example, it could not defeat a motion to dismiss for failure

to state a claim or for lack of jurisdiction." *Boulet v. Nat'l Presto Indus., Inc.*, 2013 WL 4014982, at *3 (W.D. Wis. Aug. 6, 2013). Moreover, "the right to amend as a matter of course is not absolute, and a district court may deny a motion to amend if the proposed amendment fails to cure the deficiencies in the original pleading." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (citation and quotation omitted).

Not only has SBL failed to correct previous deficiencies by failing to properly allege the citizenship of the two new proposed Defendants, SBL has failed to do so in a number of different ways, as set forth above. Although courts in this circuit have given *pro se* litigants numerous opportunities to correct previous deficiencies, *Ali v. Robinson*, 2014 WL 805915, at *1 (E.D. Wis. Feb. 28, 2014) (granting a *pro se* plaintiff an additional opportunity to "file a complaint showing that federal jurisdiction exists," but noting that dismissal with prejudice would occur if plaintiff's "next amended complaint fails to demonstrate that federal jurisdiction exists"), SBL is represented by counsel and, therefore, the Court will not give SBL any additional opportunities to correct jurisdictional deficiencies that were identified in the Court's April 18, 2019 order. [Filing No. 52.] Given the plethora of deficiencies the Court has identified in SBL's Proposed Amended Complaint, SBL's Second Motion for Leave to File Amended Complaint, [Filing No. 56], is **DENIED**.

## V.
### CONCLUSION

The Seventh Circuit has emphasized that "a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts*, 549 F.3d at 1085. SBL has not met its burden to show that this is such a case. For the reasons detailed herein, the Court **DENIES** SBL's Motion for Preliminary Injunction. [40]

In addition, the Court **DENIES** SBL's Motion to Strike, [65], and **DENIES** SBL's Motion to File an Amended Complaint, [56].

As a final matter, the Court requests that the Magistrate Judge set a settlement conference with the parties at his earliest convenience.

Date: 7/30/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**